[No. 45779. En Banc. October 4, 1979.]

THE STATE OF WASHINGTON, *Petitioner,* v. RICARDO SOLIS GARCIA, *Respondent.*

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Catherine Lee Campbell,* for petitioner.

*Dugger & Curnutt* and *Judy A. Dugger,* for respondent (appointed counsel for appeal).

WRIGHT, J.—Defendant Ricardo Solis Garcia was convicted of rape in the Superior Court in Yakima County.

Upon appeal to the Court of Appeals, Division Three, he raised several questions. All of the questions except two related to his claimed right to act as his own attorney and conduct his own defense.

The other two questions related to speedy trial and Garcia's contention that he had been denied access to records and papers he claimed to have wanted for preparation of a pro se brief. If he was denied a speedy trial it was because he absented himself from the jurisdiction. CrR 3.3(h). That question was determined in the Court of Appeals and is not before us. The Court of Appeals also found that he was not denied any document which could have been useful in the preparation of the pro se brief. That question is not before us.

The questions we shall consider all relate to his claim of a right to represent himself. Before the Court of Appeals, Garcia successfully argued that the trial court erred in failing to determine if he wanted to waive counsel and represent himself. That court remanded the case for a determination as to whether Garcia wished to conduct his own defense. The questions here are: (1) is a trial court required to tell a defendant of his right to conduct his own defense and to ask if he wishes to exercise it? (2) did defendant actually make a request to proceed pro se? and (3) if there was a self–representation request, was it timely?

On the morning the trial was to start Garcia expressed dissatisfaction with his appointed counsel. The discussion is set out here.

MR. GANO [Garcia's appointed counsel]: Well, Your Honor, I think it should be brought to the Court's attention that Mr. Garcia has previously indicated that he did not want me to represent him. I went to the jail Friday afternoon for the purposes of seeing him and he refused to see me. I don't at this point know whether Mr. Garcia wants me to defend him or not.

MR. GARCIA: No, I don't.

THE COURT: For what reason, Mr. Garcia?

MR. GARCIA: Because I don't believe I have had any proper counseling with him.

THE COURT: How many times have you and Mr. Gano visited?

MR. GARCIA: Maybe about once or twice.

THE COURT: Did you refuse to see him Friday afternoon?

MR. GARCIA: No, I got witnesses here of all the notes that I had been sending him before. I wanted to talk to him. I had some important things to talk to him about and he never came to see me and I've got witnesses here, all the jailers called him up to tell him, they called him up and all of those times I never did get to see him. This is evidence.

THE COURT: How many times have you been in consultation with Mr. Gano, do you know?

MR. GANO: Well, I'd have to review it, but I think it is in the neighborhood of about a half a dozen times, six different occasions. I'd have to check the registers in jail.

THE COURT: You have had about a half a dozen consultations with him?

MR. GANO: I believe that's about the number of times. I'd have to check the sign–in register to be absolutely sure.

THE COURT: Well, Mr. Garcia, Mr. Gano has been appointed by the Court to represent you and Mr. Gano is a very capable, intelligent public defender. He's had more of his clients acquitted up here than any other public defender that we have. He's quite capable and I'm sure that he's going to give you a better defense than anyone else could. If we don't have Mr. Gano trying this case now that's going to delay the trial of your case for another two, three weeks.

MR. GARCIA: I understand, but *I would rather have David Putney to be my lawyer.*

THE COURT: Well, I am not appointing David Putney. You can't pick and choose.

MR. GARCIA: Yes, *if I could not have David Putney I would like to have Thomas A. Dietzen.*

THE COURT: Mr. Putney is not a public defender. We will proceed with Mr. Gano in the trial.

MR. GARCIA: Well, there's no way that I can enter any kind of plea in that way because I feel I am not being represented right.

THE COURT: A plea of not guilty—

MR. GARCIA: I cannot enter no plea.

THE COURT: (Continuing)—has been entered and will be entered for you, Mr. Garcia. We will proceed with the trial. If you feel that this is some violation of your rights you have every right to appeal that decision to the Court of Appeals at the conclusion of the case.

MR. GANO: Well, at this point, Your Honor, I don't know what to say. If he is specifically rejecting me I don't mean to, in any way, shirk my responsibilities that the Court has placed on me. I am concerned though with forcing myself upon him.

THE COURT: No, you are not forcing yourself upon him. The Court is saying that Mr. Garcia does not have the unqualified right to pick and choose who's going to represent him. If he's being afforded proper and capable and intelligent counsel who's going to do the very best job for him that possibly can be—

MR. GARCIA: That if I have counsel, right, but I haven't gotten any counseling, any proper counseling at all.

THE COURT: Well, this is where I would have to disagree with you, sir. You have had five or six consultations with Mr. Gano.

MR. GARCIA: Who's going to be the Judge over here?

THE COURT: I am.

MR. GARCIA: What is your name, sir?

THE COURT: Stauffacher.

MR. GARCIA: Stauffacher?

THE COURT: Yes.

Are we ready to proceed now?

MR. GARCIA: See, they had told me I was going to court in front of Judge Hanson.

THE COURT: No, he's not trying cases.

MR. GARCIA: I represented this statement and things, this kind—some of my Constitutional Rights being violated and he waived all of them and I believe that he was really discriminating me because he didn't take it to account, you know, that none of these things here, none of my Constitutional, he didn't—he just waived them all. You know, they violated the Sixth Amendment, the Third Article under the First Amendment and just—you know, most of my Constitutional Rights. Then nobody has done nothing about it and they are not—they don't

want to do anything about it and I believe that there should be some kind of a jurisdiction over this.

THE COURT: Well, there is.

MR. GARCIA: Proper jurisdiction.

THE COURT: There is, sir, and we are trying to insure as fair as possible a trial as anyone could give to you. Now, Judge Hanson does not try cases while he is serving as the Arraignment Judge, that is why I will be trying the case rather than Judge Hanson.

MR. GARCIA: I'd like to get proper counseling before I can enter any kind of plea.

THE COURT: Well, the plea is not guilty.

MR. GARCIA: Well, I didn't enter the plea.

THE COURT: We will try the case—

MR. GARCIA: I never entered that plea.

THE COURT: (Continuing)—unless you feel that is going to totally inhibit you in terms of presentation of the defense.

MR. GANO: Well, I will tell you my concern, Your Honor, is if I am discharged and the Court is not going to appoint any other attorney to represent me *I think that it should be placed on the record then that it is up to Mr. Garcia whether he wishes it to proceed with me or without any attorney at all. My concern is the recent Supreme Court case which indicated that a client had the absolute right to refuse counsel and to represent himself,* and the Court's subsequently finding error in the trial court forcing an attorney upon a client, and that is my concern. If Mr. Garcia does not desire my representation and is aware that without my representation he isn't going to receive any representation from any other attorney unless it's one that he can retain himself then he should be aware of that and make the decision based upon that.

THE COURT: Well, I think this factual situation is distinguishable from the other case that was cited by counsel because in that particular situation we had a defendant who was somewhat learned in the law himself. He was a highly capable individual and did not wish a court–appointed counsel. *In this particular situation we have Mr. Garcia who does wish to be represented by counsel and should be represented by counsel* to fully assist him in all of this matter, but Mr. Garcia does not have the total right to choose whichever counsel he so

desires. It is the responsibility of the Court to insure that he has adequate and proper representation, which this court has done. Unless it's going to be inhibitory in some fashion at this late date on the morning of trial I am not going to allow Mr. Garcia to now change his mind and request other counsel. We will proceed with the trial of the case.

Would you have Mr. Garcia wait out there. I will need to talk to the attorneys for a minute.

(Discussion held off the record.)

(The following proceedings were held in open court in the absence of the jury:)

THE COURT: Mr. Garcia, I want you to understand that Mr. Gano is your lawyer. He's been appointed by the Court and he is going to represent you in this case. He is going to try this case for you and he is going to do his level best to give you every benefit and every bit of his expertise as far as this case is concerned. Now, I don't feel that I want to have any sort of other disruption. Can you guarantee me that you are not going to disrupt this matter any further?

MR. GARCIA: I'm not going to disrupt it. The case is—*I don't want this attorney* to be there representing me because I don't believe that he has counseled me right and I know that I don't have no money to pay for a lawyer, but maybe my folks would be able to afford one for me. They live in Texas. I'd have to get in contact with them and see if they could.

THE COURT: No.

MR. GARCIA: But in that case *I do not wish to have this attorney* with me because I believe that he hasn't been representing me right and I believe I haven't been represented.

THE COURT: Well, that's a matter that you would take to the Appellate Court. In this particular situation we are here at the day of trial, this case has been set for trial for some time and you have come up here today on the day of trial—

MR. GARCIA: I come in here days before, I told him, they never did do nothing about it. Last Friday morning, he never come to see me and I already show proofs of the time I call him and wanted to discuss the matter and he never came to see me.

THE COURT: He tells me that you and he have had discussions at least a half a dozen times.

MR. GARCIA: The jail called him, I haven't talked twice.

THE COURT: I am not going to argue with you, Mr. Garcia. We are going to go ahead with this trial today and Mr. Gano is going to try the case for you. I want to hear nothing more about it.

MR. GARCIA: This is a kangaroo trial.

THE COURT: We will proceed with the trial.

MR. GARCIA: That's what it is.

THE COURT: We will proceed with the trial. It is not a kangaroo trial at all. It will all be reported.

MR. GARCIA: I know it is a kangaroo trial.

THE COURT: We will proceed now.

(A jury was duly impaneled and sworn to try the cause.)

(Italics ours.)

After the trial defendant was convicted. A careful review of the record shows that Garcia received a good, competent and skillful defense. The same conclusion was reached by the Court of Appeals.

■ 1. Is the trial court required to tell defendant of his right to conduct his own defense and to ask if he wishes to exercise it? We hold there is no duty for the trial court to inform the defendant of or to ask if he wishes to exercise his right to proceed pro se. *Faretta v. California,* 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975) does not impose these requirements. In this connection we adopt the language of Judge Green in his dissenting opinion in *State v. Garcia,* 21 Wn. App. 58, 583 P.2d 1253 (1978), wherein he said at page 67:

Under *Faretta,* the trial court must give the defendant the opportunity to represent himself *when he so requests.* In that case, Mr. Faretta made his request 3 weeks before trial. Here, there was no request before or at trial. *Faretta* does not impose an affirmative duty upon the trial judge to advise a defendant of his right to represent himself unless the defendant first indicates that he desires to proceed pro se.

In the vast majority of cases it is contrary to the best interests of a defendant to proceed pro se. Routinely

informing all defendants of that "right" or inquiring whether they wish to exercise it would encourage many to waive the valuable right to be represented by competent counsel. Further, a defendant cannot claim that by having counsel—because he was not informed of his self–representation right or asked if he wished to waive it—he has been denied a fair trial or due process.

2. Did the defendant actually make a request to proceed pro se? A careful examination of the discussion in open court will show defendant never made the required request. His appointed attorney mentioned to the court in the presence of defendant that self–representation was a possible option. Defendant himself, however, only said:

> But in that case I do not wish to have this attorney with me because I believe that he hasn't been representing me right and I believe I haven't been represented.

The Court of Appeals majority attempted to use only a carefully edited part of this statement to indicate a desire to appear without counsel. Even the part used, which reads "But in that case I do not wish to have this attorney with me", is consistent with all defendant's other statements which indicate that though he did not want his appointed attorney, he did want another attorney.

Statements of desire not to be represented by a court appointed attorney do not express an intent to represent oneself without counsel. *Payne v. State,* 367 A.2d 1010 (Del. 1976); *Perry v. United States,* 364 A.2d 617 (D.C. Ct. App. 1976). Nor do these statements constitute the necessary unequivocal request for self–representation. *People v. Potter,* 77 Cal. App. 3d 45, 143 Cal. Rptr. 379 (1978).

3. The record clearly shows there was not a request by defendant to proceed pro se. For that reason we do not find it necessary to decide if the request was timely. We would, however, say that timeliness must be considered on a case–by–case basis. In order to invoke the unconditional self–representation right, an unequivocal assertion of that right must be made within a reasonable time before trial. *People v. Windham,* 19 Cal. 3d 121, 128–29, 560 P.2d 1187,

1191, 137 Cal. Rptr. 8, 12 (1977). If the request is made shortly before or as the trial is to begin, the existence of the right depends on the facts with a measure of discretion in the trial court. *State v. Fritz,* 21 Wn. App. 354, 361, 585 P.2d 173 (1978). In the absence of substantial reasons a late request should generally be denied, especially if the granting of such a request may result in delay of the trial.

For the reasons stated the judgment of the Court of Appeals majority is reversed and the judgment of the trial court is reinstated.

UTTER, C.J., and ROSELLINI, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

STAFFORD, J. (concurring in part)—I concur with the majority opinion except for that paragraph numbered 3. Defendant did not request to proceed pro se. Recognizing this, the majority has conceded there is no need to decide the question of "timely request". Consequently, the matter should not have been discussed further. While timeliness is an important subject it should be left for resolution in another case. All discussion of the subject is dicta as far as this case is concerned.