IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82541-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOHN EDWARD CANALES, | ) | |
| | ) | |
| Appellant | ) | |
| | ) | |

ANDRUS, A.C.J. — John Canales appeals his convictions for possession of methamphetamine[1] and possession of heroin with intent to deliver. He contends the State presented insufficient evidence to establish intent to deliver under the corpus delicti rule or to prove intent beyond a reasonable doubt. He further argues the State exceeded its discretion by charging him with possession with intent when the more specific statute prohibiting the sale of heroin applied, and he maintains he received ineffective assistance of counsel when his attorney failed to challenge the validity of a search warrant. We affirm his possession with intent to deliver

---

[1] The State concedes that the trial court must vacate Canales' methamphetamine possession conviction and resentence him in light of State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021). In August 2021, this court granted Canales' motion under RAP 7.2(e) to permit the trial court to conduct this resentencing hearing during the pendency of the appeal. We have no indication that this hearing has actually occurred.

Citations and pin cites are based on the Westlaw online version of the cited material.

conviction but remand to vacate the methamphetamine possession conviction and to resentence Canales in light of Blake.

FACTS

On October 15, 2019, detectives with the Longview Police Department and the Cowlitz-Wahkiakum Drug Task Force served a search warrant at 1226 3rd Avenue in Longview, Washington.

The search warrant was largely based on information law enforcement obtained from a confidential informant who was "working with the Longview Police Street Crimes Unit in exchange for leniency in a pending criminal matter." Longview Detective Matt Hartley provided the affidavit supporting the search warrant request and provided three paragraphs detailing his informant's experience and reliability. Detective Hartley described the informant as someone who had used both methamphetamine and heroin in the past, knew what the drugs looked like, and was knowledgeable about street prices, drug packaging, and quantities dealers typically packaged for sale. He also explained that this informant had made "multiple previous controlled purchases of controlled substances from known drug dealers in Cowlitz County," and that he found the informant to be truthful and accurate.

According to Detective Hartley's affidavit, the informant told police that they had been invited into a detached garage associated with Canales in early October 2019. While there, the informant observed Canales with methamphetamine, packaged in small plastic bags and estimated to weigh more than an ounce. The

informant saw Canales use a scale to measure the methamphetamine and then exchange the drugs for cash.

The court issued the requested warrant, authorizing police to search both the garage and Canales himself for evidence of drug transactions.

Prior to executing the warrant, Detective Sarah Brent surveilled the property for several hours. She observed many people coming and going and noted that there were two RVs parked on the property. She also saw Canales moving between the garage and the motorhomes carrying a black backpack and a red and black duffel bag.

When Detective Hartley stopped and searched Canales, he found a small plastic "baggie" containing 0.5 grams of methamphetamine in Canales's pocket. Another officer found $810 in cash in Canales's wallet. When police questioned Canales about the source of the money, he indicated that it was his savings.

Police transported Canales back to the property being searched. When Detective Hartley asked Canales about the motorhomes located on the property, Canales stated that he lived in one of them but had control over both. Canales consented to a search of the motorhomes.

Inside one, police found a red duffel bag, similar to the one Detective Brent saw in Canales' possession, the contents of which included 16 grams of heroin in a plastic bag. Detective Hartley testified that this quantity was consistent with dealing rather than personal use. Police also found a large quantity of marijuana in the motorhome and a few methamphetamine pipes in one of Canales' jackets.

In the second motorhome, police found a rubber container in which they found a small quantity of heroin and empty plastic baggies. The baggies were approximately an inch in height by three-quarters of an inch in width and were decorated with peace symbols. According to Detective Hartley, the baggies were the type used by dealers to package methamphetamine and heroin for sale. Police did not find any syringes or paraphernalia commonly used to ingest heroin. Nor did they find any scales or any written records suggesting sales.

While police were searching the motorhomes, Canales asked Detective Brent why he was under arrest. She explained that he was being arrested for possession with intent to deliver. When he "scoffed," Detective Brent commented that he had over an ounce of heroin, suggesting possession with intent, and Canales responded "That wasn't an ounce, that was a half-ounce."

The State charged Canales with one count of possession with intent to deliver heroin and one count of possession of methamphetamine. Canales was convicted as charged and sentenced to 108 months imprisonment and 12 months community custody. Canales appeals.

ANALYSIS

1. Corpus Delicti

Canales first argues that the State presented insufficient evidence to establish corpus delicti of possession with intent to deliver heroin. We reject this argument.

Under the corpus delicti rule, before a trial court may admit a defendant's confession, the State must produce independent evidence other than a

defendant's self-incriminating statements, to corroborate that the crime described in the defendant's statement actually occurred.[2]  State v. Brockob, 159 Wn.2d 311, 328, 150 P.3d 59 (2006).  The independent evidence need not establish the corpus delicti beyond a reasonable doubt or even by a preponderance of the evidence.  State v. Cardenas-Flores, 189 Wn.2d 243, 264, 401 P.3d 19 (2017).  "The evidence is sufficient if it supports a logical and reasonable inference of the facts the State seeks to prove."  Id.  The independent evidence, however, must be consistent with guilt and inconsistent with a hypothesis of innocence.  Brockob, 159 Wn.2d at 329 (quoting State v. Aten, 130 Wn.2d 640, 660, 927 P.2d 210 (1996)).

The corpus delicti rule is a rule of sufficiency as well as a rule of evidence.  Cardenas-Flores, 189 Wn.2d at 256.  We therefore review de novo whether sufficient corroborating evidence exists to satisfy the corpus delicti rule.  State v. Hotchkiss, 1 Wn. App. 2d 275, 279, 404 P.3d 629 (2017).  We assume the truth of the State's evidence and all reasonable inferences from that evidence in a light most favorable to the State.  Cardenas-Flores, 189 Wn.2d at 264.

Mere possession of drugs alone cannot constitute sufficient corroborating evidence of an intent to deliver.  Hotchkiss, 1 Wn. App. 2d at 281.  But the corpus

---

[2] The State argues that the corpus delicti rule does not apply because Canales did not admit or confess to delivering drugs.  The State offered Canales' statements that he lived in one motorhome and had control over the other, suggesting he knowingly possessed the heroin.  He also stated that the quantity of heroin was no greater than a half-ounce, demonstrating knowledge of the amount he possessed.  And he acknowledged he had over $800 in cash on his person.  While these statements, separately, are not a direct confession of drug delivery, they were inculpatory.  We will therefore analyze whether the evidence was sufficient to demonstrate an intent to deliver under the corpus delicti rule.

delicti rule is satisfied if at least one additional factor, suggestive of intent, is present.  Id. (citing State v. Whalen, 131 Wn. App. 58, 63, 126 P.3d 55 (2005)).

Here, the State presented evidence that Canales was in possession of a large quantity of heroin and that it was more than would typically be possessed for personal use.  In addition to this, Canales was in possession of $810 in cash and several small baggies consistent with those commonly used to package and distribute drugs.  Moreover, the police found no syringes or other paraphernalia indicating that the heroin was for Canales' personal use.  This evidence supports a logical and reasonable inference that Canales intended to deliver the heroin he possessed.

Canales argues that this evidence does not satisfy the corpus delicti rule because the State did not demonstrate that the baggies or cash were connected to the drugs and that his possession of these items was more consistent with a theory of innocence than guilt.  But the test is not whether there could be an innocent explanation for one's possessing each distinct piece of evidence.  Rather, the test it whether the totality of the evidence before the court supports a hypothesis of innocence.

Brockob is illustrative of this point.  That case involved three consolidated cases all involving corpus delicti issues.  159 Wn. 2d at 317.  One of the defendants, Gonzales, was pulled over and arrested for driving on a suspended license.  Id. at 321.  When police searched the car, they found large quantities of ephedrine and several loose unused coffee filters in the back seat.  Id.  Despite the fact that one can possess coffee filters for completely innocent reasons, our

Supreme Court concluded that the presence of the coffee filters in combination with testimony that filters are used to turn ephedrine into methamphetamine and evidence that Gonzales collaborated with another to purchase more than the legally allowed amount of ephedrine was sufficient to prove the corpus delicti of possession of ephedrine with intent to manufacture methamphetamine. Id. at 333.

In State v. Sprague, 16 Wn. App. 2d 213, 480 P.3d 471 (2021), Division Two concluded the evidence was insufficient to establish corpus delicti of possession with intent to deliver, rendering Sprague's confession inadmissible. There, when police searched Sprague's home, they found 10 grams of methamphetamine, a metal container with methamphetamine residue, a scale, a bundle of plastic grocery bags, and a homemade pipe. Id. at 216. The State did not argue that the pipe or the container supported an inference of intent to distribute. Id. at 230. Instead, it relied on the presence of the scale and the grocery bags. Id.

The court concluded that this evidence was insufficient to establish corpus delicti because Sprague was using the grocery bags as liners for his garbage can and the bags were not torn into small pieces to suggest he was using them to package methamphetamine. The police also testified that it is not uncommon for drug users to have a scale for their personal use. Because the evidence, even when considered together, was consistent with a hypothesis of drug use rather than drug distribution, it held Sprague's incriminating statements were improperly admitted. Id. at 232.

This case is analogous to the Gonzales case outlined in <u>Brockob</u> and distinguishable from <u>Sprague</u>. The totality of the evidence does not suggest an innocent explanation for Canales' possession of the large quantity of heroin, cash and tiny baggies. While Canales argued below he was a drug user but not a dealer, he had no foil or syringes to facilitate his ingestion of the heroin. Before his arrest, detectives saw a significant number of people coming and going from his property and saw him moving the duffle bag containing the heroin from one motorhome to the other. The presence of the cash and baggies, in combination with this other evidence, suggests there is no innocent hypothesis for these events and supports a logical and reasonable inference that Canales intended to distribute heroin. Canales' incriminating statements were thus properly admitted.

2. <u>Sufficiency of the Evidence</u>

Even if the trial court should have excluded Canales' incriminating statements, we nevertheless conclude that the State presented sufficient evidence to prove possession with intent to deliver beyond a reasonable doubt. Evidence that is insufficient to establish corpus delicti may be sufficient to sustain a conviction where a defendant's incriminating statements "did not add significantly to the quantum of evidence against him." <u>Brockob</u>, 159 Wn.2d at 341.

We review de novo whether the evidence was sufficient to support a conviction. <u>State v. Rich</u>, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime

beyond a reasonable doubt.  State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

In order to prove unlawful possession of a controlled substance with intent to deliver, the State had to prove (1) unlawful possession (2) of a controlled substance (3) with the intent to deliver.  RCW 69.50.401(1).  Canales did not confess to delivering heroin.  While his statements to the police supported the State's contention that he possessed the drugs, they did not add to the quantum of evidence to prove an intent to deliver.

The evidence of intent here was, as is typical, circumstantial.  Sprague, 16 Wn. App. 2d at 233 (circumstantial evidence may be sufficient to prove intent to distribute).  As a general rule, however, "[m]ere possession of a controlled substance, including quantities greater than needed for personal use, is not sufficient to support an inference of intent to deliver."  State v. O'Connor, 155 Wn. App. 282, 290, 229 P.3d 880 (2010).  A finder of fact may infer intent to deliver from possession of a significant amount of a controlled substance plus at least one additional fact suggesting the intent to deliver.  Id.

This one additional fact can be the possession of a large quantity of cash. See State v. Campos, 100 Wn. App. 218, 223-24, 998 P.2d 893 (2000) (conviction upheld where defendant possessed a large amount of cocaine and $1,750 in cash); State v. Hagler, 74 Wn .App. 232, 236-37, 872 P.2d 85 (1994) (conviction upheld where the defendant possessed a large amount of cocaine and $342 in cash);  State v. Lopez, 79 Wn. App. 755, 768, 904 P.2d 1179 (1995) (large amount of cocaine and more than $800 in cash sufficient to support an inference of intent);

State v. Lane, 56 Wn. App. 286, 290, 297-98, 786 P.2d 277 (1989) (conviction upheld where the defendant possessed one ounce of cocaine, $850 in cash, and a scale).

Possession of packaging materials, in addition to large quantities of drugs, can similarly support such a conviction.  See Sprague, 16 Wn. App. 2d at 234; State v. Simpson, 22 Wn. App. 572, 575, 590 P.2d 1276 (1979) (balloons used for packaging in addition to drugs supported an intent to deliver).

We conclude there is more than sufficient evidence to prove Canales's intent beyond a reasonable doubt.  First, Canales possessed 16 grams of heroin, when the typical amount of heroin used by a single person is less than a single gram.  Second, Canales had a large amount of cash in his wallet on the same day that Detective Brent saw multiple vehicles entering Canales' property and people entering his shop and trailer over a three hour period.  Third, police found a number of extremely small baggies of the type commonly used to package heroin for distribution.  Fourth, while Canales was in possession of a pipe for smoking methamphetamine, he had no paraphernalia to use to ingest heroin.

Canales argues that there is nothing connecting the heroin to the baggies or to the cash in his wallet because they were all found in different locations.  But the evidence connecting everything was Canales.  He possessed all three items, albeit in different locations on his person or property.  Washington courts have upheld convictions for possession with intent where the items supporting an inference of intent were not located with the drugs themselves.  See Lane, 56 Wn. App. at 289, 298 (cocaine found in one room; cash and scale found in different

room sufficient to support conviction). Here, the connection between Canales, the heroin, the cash, and the packaging is sufficiently compelling that his intent to deliver "'is plainly indicated as a matter of logical probability.'" Sprague, 16 Wn. App. 2d at 233 (quoting State v. Davis, 79 Wn. App. 591, 594, 904 P.2d 306 (1995)). Viewed in the light most favorable to the State, the evidence was sufficient to support the jury's finding that Canales possessed heroin with the intent to deliver.

### 3. Charging Discretion

Canales next contends that the State exceeded its discretion in charging him with possession with intent to deliver under RCW 69.50.401, rather than with the attempted sale of heroin under RCW 69.50.410.

Prosecutors have wide discretion when charging a suspect. State v. Pettitt, 93 Wn.2d 288, 294, 609 P.2d 1364 (1980); State v. Lewis, 115 Wn.2d 294, 299, 797 P.2d 1141 (1990). This discretion, however, "is not entirely unfettered." State v. Rice, 174 Wn.2d 884, 903, 279 P.3d 849 (2012). Under the general-specific rule of statutory construction, if a special statute and general statute punish the same conduct, the accused can be charged only under the special statute. State v. Numrich, 197 Wn.2d 1, 13, 480 P.3d 376 (2021) (quoting State v. Shriner, 101 Wn.2d 576, 580, 681 P.2d 237 (1984)).

Canales argues that the State abused its discretion when it charged him with possession with intent to deliver, rather than the attempted sale of heroin. The State argues that it did not abuse its discretion because, as a threshold matter,

- 11 -

Canales's conduct could not be charged under both of these statutes. We agree with the State.

RCW 69.50.410 makes it a felony for "any person to sell for profit" a controlled substance. RCW 69.50.410(1); RCW 69.50.204(b)(11). "For profit" is defined as obtaining anything of value in exchange for the drugs. RCW 69.50.410(1)(b). "To sell" means to pass title and possession for a price, or for anything of value, in exchange for the controlled substance. 11 WASHINGTON PRACTICE: PATTERN JURY INSTRUCTIONS: CRIMINAL 50.17 at 1244 (5th ed. 2021) (WPIC). A violation of RCW 69.50.410 is a class C felony. RCW 69.50.410(1); State v. Peterson, No. 98201-5, slip. op. at 14 (Wash. Nov. 18, 2021) https://www.courts.wa.gov/opinions/pdf/982015.pdf.

RCW 69.50.407 makes it a crime to attempt to commit any offense under chapter 69.50 RCW. While the Uniform Controlled Substances Act (UCSA) does not define attempt, the general attempt statute, RCW 9A.28.020, applies to UCSA crimes. State v. Pineda-Pineda, 154 Wn. App. 653, 668, 226 P.3d 164 (2010) (quoting State v. Lynn, 67 Wn. App. 339, 349, 835 P.2d 251 (1992)). Under that statute, the State must prove that, with intent to commit a specific crime, a defendant took a substantial step toward the commission of that crime. RCW 9A.28.020. To constitute a substantial step, the conduct must strongly corroborate the defendant's criminal purpose and must be more than mere preparation. State v. Townsend, 147 Wn.2d 666, 679, 57 P.3d 255 (2002). Thus, to prove the attempted sale of heroin, the State must show that a defendant made a substantial step toward making a sale, with the intent to do so, for money or something of

- 12 -

value, and with knowledge that the substance being sold was a controlled substance. 11 WASHINGTON PRACTICE: PATTERN JURY INSTRUCTIONS: CRIMINAL 50.16 at 1241, 100.02 at 492 (5th ed. 2021) (WPIC).

The State charged Canales with violating RCW 69.50.401, which makes it unlawful for "any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." RCW 69.50.401(1). "To deliver" is defined as the "actual or constructive transfer from one person to another of a substance, whether or not there is an agency relationship." RCW 69.50.101(i). A violation of RCW 69.50.401 is a Class B felony for certain controlled substances, including heroin, but a Class C felony for other controlled substances. Because the identity of the controlled substance increases the statutory maximum sentence under this provision, the identity of the substance is an essential element of the crime. State v. Goodman, 150 Wn.2d 774, 785, 83 P.3d (2004); State v. Clark-El, 196 Wn. App. 614, 618, 384 P.3d 627 (2016).

Our Supreme Court has recently discussed the interaction between RCW 69.50.410 and 60.59.410:

> It is true that selling a controlled substance for profit, criminalized in RCW 69.50.410, is encapsulated within RCW 69.50.401. But this is not unusual in our criminal laws. While these two statutes do overlap, their elements are different. RCW 69.50.410 requires prosecutors to prove than an individual sold, for profit, a Schedule I controlled substance (with the exception of marijuana). By comparison, RCW 69.50.401 requires a prosecutor to prove that a person delivered a controlled substance, and the State need not show that a controlled substance was sold for profit.

Peterson, at 16-17 (citations omitted). After reviewing the two statutes' legislative history, the court concluded that the two statutes do not criminalize the same

- 13 -

conduct and do not confer unfettered discretion on prosecutors. Id. at 17. "Instead, prosecutors are bound by the different elements." Id.

Here, the State reasonably concluded that Canales could not be charged with selling or attempting to sell heroin because there was insufficient evidence that he sold those drugs to anyone for a profit or that he attempted to do so. Canales was in possession of heroin, packing material, and other paraphernalia, suggesting he was preparing to distribute that drug at some point in the future. But the cash Canales possessed and the people coming and going from his property could have been related to sales of methamphetamine or marijuana, drugs Canales possessed at the same time he possessed the heroin. Because Canales's conduct could not be charged under both RCW 69.50.401 and RCW 69.60.410, the State did not abuse its discretion in charging Canales with possession with intent to deliver heroin rather than the sale or attempted sale of that controlled substance.

4. Ineffective Assistance of Counsel

Canales next argues he received ineffective assistance of counsel because his attorney failed to challenge the validity of the search warrant. He contends the warrant, based on statements from a confidential informant with "questionable credentials," was invalid. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant's right to effective assistance of counsel. State v. Estes, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). To prevail on a claim for ineffective assistance, counsel's

performance must have been deficient, and the deficient performance must have resulted in prejudice. State v. Grier, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011); Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Performance is deficient if it falls "below an objective standard of reasonableness based on consideration of all the circumstances." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). There is a strong presumption that counsel's representation was effective. Id. at 335. To rebut this presumption, "the defendant bears the burden of establishing the absence of any 'conceivable legitimate tactic explaining counsel's performance.'" State v. Grier, 171 Wn.2d at 42 (emphasis omitted) (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). To prove deficient performance for failure to challenge a search warrant, Canales must demonstrate that a motion to suppress would have been successful. See State v. Saunders, 91 Wn. App. 575, 578, 958 P.2d 364 (1998).

Canales has not met his burden of proof that a challenge to the search warrant would have succeeded. A search warrant can issue if a magistrate concludes that a defendant is probably involved in criminal activity and evidence of the crime can be found in the place to be searched. State v. Thein, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). When an informant's tip forms the basis for probable cause, Washington courts apply the Aguilar-Spinelli[3] test. State v.

---

[3] The Aguilar-Spinelli test is the two-prong test articulated by the United States Supreme Court in Aguilar v. Texas, 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); and Spinelli v. United States, 393 U.S. 410, 415-16, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), (abrogated by Illinois v.

Jackson, 102 Wn.2d 432, 433, 688 P.2d 136 (1984). Under this test, the officer's affidavit must establish (1) the reliability of the informant's basis of knowledge, and (2) the veracity of the informant. Id. at 435.

To demonstrate the informant's basis of knowledge, the affidavit must show "that the information provided by the informant was based upon personal knowledge." State v. Vickers, 148 Wn.2d 91, 112, 59 P.3d 58 (2002). Here, the affiant testified that the informant witnessed Canales in possession of and selling suspected methamphetamine. Canales concedes the affidavit satisfies the knowledge prong of the Aguilar-Spinelli test.

Canales, however, contends that the affidavit fails to establish the veracity of the informant. The record does not support this contention. To establish veracity, an affidavit must demonstrate that the informant has provided accurate information to the police in the past. Id. A controlled buy for police can establish an informant's reliability. Lane, 56 Wn. App. at 293 (citing State v. Casto, 39 Wn. App. 229, 234-35, 692 P.2d 890 (1984)).

Here, the affidavit establishes the informant's history and familiarity with the illegal substances at issues in this case. Detective Hartley stated that "[the informant] has made multiple previous controlled purchases of controlled substances from known drug dealers in Cowlitz County. The information provided by [the informant] was found to be truthful and accurate." His affidavit clearly shows that the informant provided accurate information to the police in the past, as demonstrated by multiple prior drug purchases.

---

Gates, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), but adhered to by Jackson, 102 Wn.2d 432).

- 16 -

Canales argues that the informant in this case was unreliable because their identity was not known to the magistrate, the informant was working with police "in exchange for leniency in a pending criminal matter," and the informant admitted using drugs in the past. But these facts were set forth in the affidavit and known by the magistrate who issued the warrant. Even if material to the informant's veracity, the affidavit established that the informant had a history of providing accurate information in spite of past drug use and criminal status. See State v. Taylor, 74 Wn. App. 111, 119, 872 P.2d 53 (1994) (informant's addiction and pending criminal charges, despite not being disclosed to magistrate, did not vitiate the warrant in the absence of any evidence that these circumstances affected his veracity or reliability).

Because the Aguilar-Spinelli test was satisfied in this case, any challenge to the search warrant would likely have failed. Thus, Canales has failed to demonstrate that his counsel was ineffective.

5. Statement of Additional Grounds

In a statement of additional grounds, Canales argues he received ineffective assistance of counsel when his attorney failed to subpoena a number of witnesses, including the confidential informant, and when his attorney prevented him from testifying on his own behalf. He further contends the trial court erred when it denied his requests to change venue, to continue trial to allow him to obtain witnesses, and to permit him to undergo drug treatment. Canales makes no citation to the record and it appears that these arguments rely upon evidence outside the record. We thus decline to address them. See McFarland, 127 Wn.2d at 335 ("If a

defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so it through a personal restraint petition.").

Canales next argues he received ineffective assistance of counsel when his attorney chose not to cross-examine several witnesses, including Officer Brian Durbin and forensic scientist Olivia Ross, at trial. Officer Durbin, the evidence detective at the scene, provided chain-of-custody testimony. Ross testified about the testing she performed on the substances found on Canales' property. Neither witness could shed any light on whether Canales intended to deliver heroin to others.

Canales fails to demonstrate why his attorney's decision to forego cross examination of these witnesses was anything other than a legitimate trial tactic. See Grier, 171 Wn.2d at 42 (the defendant bears the burden of demonstrating that counsel's performance was not the result of conceivable legitimate tactics). In his opening statement, Canales's attorney told the jury that "there's going to be enough evidence for you to convict him of the possession of heroin, just not as I indicated he [sic] possession with intent to deliver." During closing arguments, counsel argued that the State had failed to prove that Canales was a dealer, rather than just a drug user.

It appears counsel strategically chose not to challenge the State's allegation that Canales possessed methamphetamine and heroin and to focus instead on whether the State proved he intended to sell the drugs to others. Counsel's strategic decision not to question Durbin and Ross was reasonable because there

appears to have been little to be gained by doing so. Because Canales cannot demonstrate that his attorney's decision lacked any conceivable strategy, he cannot show that the representation was deficient.

Finally, Canales argues the trial court erred when it denied his request for a new attorney. A criminal defendant who is dissatisfied with counsel must show good cause to warrant substitution of counsel. State v. Stenson, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997). Good cause may be shown through an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. Id. "Simple lack of rapport between attorney and client is not a basis for withdrawal of counsel, even where client and attorney agree withdrawal is preferred." State v. Hegge, 53 Wn. App. 345, 350, 766 P.2d 1127 (1989). We review a trial court's refusal to appoint new counsel for an abuse of discretion. State v. Lindsey, 177 Wn. App. 233, 248, 311 P.3d 61 (2013). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. Id. at 248-49.

On January 7, 2020, before trial began, Canales told the court that he and his attorney were not communicating. He said his counsel refused to seek a trial continuance and told him that it was up to the prosecutor to decide whether to refer his case to drug court. When questioned by the court, Canales clarified that he disagreed with his attorney's advice and did not like counsel's answers to his questions. Canales's counsel described their communication as "acrimonious" but told the court he felt he was still capable of representing Canales. The court denied

the request to substitute counsel, finding that there was no breakdown in communication and insufficient facts to justify the appointment of new counsel.

The record supports the trial court's finding that Canales and his counsel may have had a lack of rapport but they were communicating. He failed to demonstrate a complete breakdown in communication and it was not an abuse of discretion to deny Canales's request for new counsel.

We vacate Canales's conviction for possession of methamphetamine, affirm his conviction for possession of heroin with intent to deliver, and reverse Canales's sentence and remand for a new sentencing hearing in light of Blake.

_Andrus, A.C.J._

WE CONCUR: